DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1923.

---

**Pressed Steel Equipment Company, Appellant, v. Thornburgh Pressteel Company, Defendant. Commercial Acceptance Trust, Garnishee, Appellee.**

### Gen. No. 27,741.

1. GARNISHMENT—*when garnishee not liable as agent of court.* A garnishee who purchased from the principal debtor accounts receivable is not liable for the accounts themselves or their proceeds as an agent of the court where it purchased the accounts outright and no issue of ownership is raised, the theory of the garnishment being that the garnishee owned them and is indebted to the principal debtor therefor.

2. GARNISHMENT—*uncertain and contingent liabilities.* The liability for the unpaid balance of the purchase price of accounts receivable from the principal debtor is uncertain and contingent where the contract of sale provides that the purchaser shall pay a percentage of the face value of the accounts in cash to the seller at the time of the sale and the remainder of the price less charges and deductions upon payment of the accounts to the purchaser, and the title to the accounts passes absolutely to the purchaser, and such liability is not subject to garnishment.

3. GARNISHMENT—*when contingent liability becomes "debt" subject to garnishment.* A liability for the unpaid purchase price of

(1)

accounts receivable bought outright by the garnishee from the principal debtor under an agreement by the purchaser to pay the principal debtor as and when the accounts are paid to it, which was contingent at the time of service of the garnishment and the answer to the interrogatories, does not become a "legal debt" subject to garnishment under the Garnishment Act, secs. 5, 7, Cahill's Ill. St. ch. 62, ¶¶ 5, 7, as to the proceeds of accounts paid to the garnishee thereafter but before the filing of an amended answer and after answer and before trial.

4. GARNISHMENT—*payment of garnishee to principal debtor after answer as admission of indebtedness.* Payment by the garnishee to the principal debtor after answer, of an amount then due which was merely a contingent liability at the time of answer, does not constitute an admission by the garnishee that it was indebted to the principal debtor in such amount, the contingency not having occurred until after answer and the answer having denied indebtedness.

5. APPEAL AND ERROR—*review of errors not affecting appealing defendant.* Cross errors assigned by the garnishee that the trial court erred in sustaining the attachment will not be considered on appeal by the attaching creditor where the points made do not go to want of jurisdiction but to alleged defects in the proceedings, which may be questioned only by the principal defendant who has not appealed.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. ROBERT E. GENTZEL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1922. Affirmed. Opinion filed February 13, 1923.

WALTER H. ECKERT and WARREN B. BUCKLEY, for appellant.

WINSTON, STRAWN & SHAW, for appellee; JOHN C. SLADE and HAROLD BEACOM, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This is an attachment suit brought by appellant against the Thornburgh Pressteel Company, as debtor, in which the Commercial Acceptance Trust was served as garnishee. The attachment was sustained, and judgment entered against the debtor for $5,598, and against said garnishee for $708.72. Ap-

pellant contends the latter judgment should have been for $4,622.55.

The Thornburgh Pressteel Company entered into a contract to sell said garnishee its accounts receivable. The contract, in which they are respectively referred to as the first and second party, provided that:

"Second party will from time to time, during the continuance of this agreement, buy such accounts belonging to first party as may be acceptable to second party, and will pay therefor 100% of the net face value thereof, less a charge equal to the legal rate of interest on the money outstanding thereon, of which 77% of the net face value thereof shall be paid in cash upon acceptance thereof by second party, and *the remaining 23%* less any deductions and plus any over-payments by the debtor, and less total charges, as shown in lines 38 to 42 hereof, to be paid to the first party immediately *upon payment of any such accounts to second party;* provided, * * * any moneys, accounts or property of first party which may come into possession of second party may be held and later applied to the payment of any accounts or any indebtedness."

In its answer to the interrogatories filed the garnishee set up this contract and alleged that at the time of service of the writ, July 31, 1919, it was not indebted to the Thornburgh Pressteel Company, but that after that time and up to the time of filing its amended answer, August 27, 1919, the sum of $1,017.89 became due to said company on said accounts. The answer was traversed, thus raising the issue as to the amount of the indebtedness at the latter date. On the trial the evidence showed that on that date the garnishee owed defendant $308.17 less than the amount stated in its answer, and it was for the difference between the two sums that judgment was entered against it.

But because the evidence also showed that the garnishee had collected after answer and before trial—

which was some two years later—the entire twenty-three per cent referred to in the contract, amounting, less deductions, to $4,622.55, and had remitted to the debtor all except what was found to be owing at the time of the answer, appellant contends that the entire amount was reachable by the garnishee process. On the other hand, appellee contends that at the time of filing its answer its liability to pay the Thornburgh Pressteel Company anything beyond what it had then collected on said accounts was entirely dependent on whether the accounts were paid to it, and therefore the liability was a contingent one and for that reason not subject to garnishment.

That an indebtedness at the time of service of process, or even up to the date of answer, whether due or not, was subject to garnishment is not questioned. But it is urged by appellant (1) that the liability was not contingent or uncertain; (2) and if it was it could be reached under section 5 of the Garnishment Act [Cahill's Ill. St. ch. 62, ¶ 5]; (3) that the payment of the portion collected after answer was an admission of the indebtedness; and (4) that the garnishee must answer for the accounts themselves or their proceeds and hold them as agent for the court.

1. Was the liability contingent or uncertain?

It will remove some confusion and eliminate from discussion appellant's last contention, to support which it cites *Buckingham v. Shoyer*, 86 Ill. App. 364, to note that no question arises here as to the ownership of the accounts assigned. By the terms of the contract they became the property of the garnishee. (Drake on Attachment, 5th Ed., sec. 522.) But in the case cited an issue was raised as to the ownership and title of moneys garnisheed, and a judgment therefor was entered against the garnishee and satisfied while the interplea raising such issue was pending. It was with reference to such a state of facts

that the court said the funds in the hands of the garnishees were *in custodia legis* and held by them as agents of the court. No such question arises here. This rule is generally applicable to effects of the defendant in the possession of the garnishee and must be understood with reference to the facts before the court. (Id., sec. 453a.) The theory of the garnishment in this case is not that the garnishee held accounts belonging to the principal debtor but that the garnishee owned them and was indebted therefor. The first inquiry therefore is, was there "a debt owing" and when did it become so?

We think it is clear, and it is not questioned, that while the purchase price of the accounts was based on their face value yet the contract contemplated that twenty-three per cent thereof should be payable out of the accounts assigned and collected, and when and as collected, and that if not collected no indebtedness would arise for the twenty-three per cent or any portion thereof that those collected would not pay. Hence a liability for any part of the twenty-three per cent was contingent and uncertain in its nature.

Assuming that the accounts were reasonably good so that a future indebtedness was probable, yet at the time of the answer it was not capable of ascertainment or computation. Defining a "debt" Bouvier says: "Its distinguishing and necessary feature is that a fixed and specific amount is owing and no future valuation is required to settle it." (3rd ed., vol. 1, p. 787.) Considering what is a "debt" subject to garnishment, in *Capes v. Burgess,* 135 Ill. 61, Mr. Justice Bailey recognized as the rule generally laid down that it must be "a legal debt due or to become due." The general rule, as stated in Drake on Attachments, is:

"The debt * * * must be absolutely payable at present or in future and not dependent upon any contingency. If the contract between the parties be of such a nature that it is uncertain or contingent

whether anything will ever be due in virtue of it, it will not give rise to such a credit as may be attached."

This was recognized as the rule in this State in another opinion by Mr. Justice Bailey in *Hanover Fire Ins. Co. v. Connor,* 20 Ill. App. 297, where it was said:

"The rule, then, that an indebtedness, to be subject to garnishment, must be owing absolutely and subject to no contingency, must be applied, in this State, in such a way as to be consistent with the provisions of our statute."

Construing sections 5 and 7 of the Garnishment Act [Cahill's Ill. St. ch. 62, ¶¶ 5, 7] in *Capes v. Burgess, supra,* the court held that the term "choses in action and credits" as used therein was intended to be limited to debts in the stricter and more technical sense of that word, and as confirming the view referred to the fact that section 19 of the Act [Cahill's Ill. St. ch. 62, ¶ 19] designated the liability of the garnishee thereunder as a "debt." In view of these authorities it cannot be questioned that if the liability is a contingent one, as in the case at bar, it is not subject to garnishment, and such is the doctrine generally, as stated in the textbooks.

2. But at what time must it be a "debt" to render it subject to garnishment?

Answering this question, in *Hanover Fire Ins. Co. v. Connor, supra,* the court said:

"The statute seems to embrace all of the following cases: 1, where the debt is owing and due at the date of service; 2, where it is owing at the date of service and becomes due thereafter; and 3, where it is owing and due at any time after the service of the writ, up to the date of the answer."

After stating the rule that the liability must not be a contingent one, the court added:

"It is sufficient that the indebtedness be owing without uncertainty or contingency at the date of the answer. Even if it be contingent at the time of serv-

ice, if the contingency be removed before answer it is subject to garnishment.   *   *   *" (p. 309)

Discussing the same act in *Young v. First Nat. Bank of Cairo,* 51 Ill. 73, the court said:

"Under this enactment, no one would seriously contend that the garnishee would not be compelled to make a full discovery up to the time of making his answer.   The statute declares he shall, and in language too plain to be mistaken."

But it is contended by appellant that the words "or at any time after" in sections 5 and 7 contemplate reaching a contingent indebtedness where the contingency is removed after answer.   The fact that these words were italicized in Mr. Justice Bailey's opinion in *Hanover Fire Ins. Co. v. Connor,* indicates that their significance was not overlooked.   But it is otherwise clear that such a construction is untenable. It is manifest that interrogatories call for a state of facts existing at the time of the answer thereto. It is provided under section 7 that when an issue is raised thereon "the trial shall be conducted as other trials at law."   We need not discuss what is elementary, that the issues raised by pleadings in trials at law relate to facts then existing, and that the evidence will be confined thereto.   In the case at bar the answer denied the existence of an indebtedness and the evidence disclosed that there was no "legal debt" at that time, but merely a contingent liability.   Evidence as to a subsequent state of facts was not relevant to the issue.   This is not a new question, either in this State or elsewhere.   It was held in both *Boddie v. Tudor Boiler Mfg. Co.,* 51 Ill. App. 302, and in *Gross v. Sloan,* 54 Ill. App. 202, that the issue was as to an indebtedness to the defendant, due or to become due, when the answer was filed, and that a verdict as to a debt arising thereafter was not responsive to the issue.   This general rule of procedure is particularly applicable to a garnishment proceeding, which from its very nature contemplates

reaching what is capable at the time of answer of being reduced to a certain sum for application to the principal debt. If the answer admits an indebtedness and be taken as true, judgment will be entered therefor. If issue be taken, it is upon the correctness of the answer as to the facts then existing.

"The garnishee's liability, considered with reference to the time of garnishment, cannot, without the aid of statutory provision, be extended beyond the effects or credits in his hands at the time of garnishment. * * * And if such liability at the time of the garnishment be dependent on the happening of a contingency, which does happen afterwards, so as to create an absolute debt, yet the garnishee cannot be charged; for such was not the condition of things at the time of garnishment." (Drake on Attachments, sec. 667.)

That time, however, may relate to the date of service of process or to the time of filing the answer, according to the statute of the jurisdiction where the question arises. Under our statute it relates to an existing indebtedness at the time of answer although not due, except under section 14 of the Act [Cahill's Ill. St. ch. 62, ¶ 14] unearned wages after service of the writ are not subject to garnishment. (*Bliss v. Smith,* 78 Ill. 359; *Lund v. Dole Valve Co.,* 185 Ill. App. 350.) Cases cited by appellant where there was an indebtedness existing at the time of service of process but payable subsequently, as where the garnishee held a promissory note not due (*Snider v. Ridgeway,* 49 Ill. 522; *Wells v. Binner,* 170 Ill. App. 412), are manifestly not in point. Nor in view of the construction put upon our own statute need we consider constructions given to statutes of other jurisdictions, which, however, conform in general to the views herein stated.

3. Appellant's third contention is, in substance, that the payment of the indebtedness which arose, as above stated, after the answer constituted an admission "that the garnishee was indebted for that

amount," citing *Wilcus v. Kling*, 87 Ill. 107, and *Miller v. Scoville*, 35 Ill. App. 385. What was said in those cases as to payment constituting admission of a debt was with reference to a very different state of facts from those at bar. In each case the money claimed to be owing from the garnishee to the judgment debtor was for material furnished or work completed before the garnishee answered, but which under the contract was to be paid for only upon issuance of a certificate. In each case payment therefor was made without requiring the certificate, thus waiving the contingency pleaded and impliedly admitting not only the debt but that it was due. The question in those cases, however, was mainly when the debt became due, and not, as here, whether the debt existed at the time of answer. In those cases it unquestionably did then exist because it was for work completed before that time. As said in the *Miller* case it was the performance of the work under the contract that created the debt, not the issuance of the certificate. And, as said in the *Wilcus* case, it could not be said that the debt was not due in the absence of the certificate; although, without waiver thereof, as said in the *Miller* case, its collection might not be enforced until the certificate was produced. But the waiver was tantamount to admitting that it was due at the time of answer, the work having been then performed. But here the debt did not and could not arise until the happening of the contingency, which was not until after answer. Not until then did the debt exist, and that was after issues formed which related to whether it existed at the time of answer and not afterwards. The fact that it subsequently arose and was paid before trial had no relation to the issues, and payment under such circumstances certainly could not be construed to change the fact that the debt did not exist at the time of answer. As also said in the *Miller* case: "The

contingency that will render a debt not garnishable must be one that affects the debt itself, and not the amount of it, or the time or manner of payment.''

Hence, we are of the opinion that under the terms of the contract, the character of which is not brought in question, and the facts in evidence, no indebtedness for the twenty-three per cent, beyond what was expressly admitted in the answer, existed at the time of the answer, and what accrued thereafter was not subject to garnishment. Accordingly the judgment will be affirmed.

The garnishee has assigned cross errors which are based on the contention that the court erred in sustaining the attachment. As the points made with respect thereto do not go to the court's want of jurisdiction but to alleged defective proceedings, and the principal defendant has not appealed, that subject is not before us for review, as such alleged errors and irregularities can be called in question only by the latter. (*Pierce v. Carleton,* 12 Ill. 358; *Kirk v. Elmer H. Dearth Agency,* 171 Ill. 207; *Iroquois Furnace Co. v. Wilkin Mfg. Co.,* 181 Ill. 582.)

*Affirmed.*

MORRILL and GRIDLEY, JJ., concur.