# Shraiberg Manufacturing Company for use of Robert Bachrach, Appellee, v. Boston Insurance Company of Boston, Massachusetts, Appellant.

## Gen. No. 31,381.

1. APPEAL AND ERROR—*opinion on one cause as controlling consolidated causes.* After causes are consolidated on appeal, and the appellee, though objecting, has failed to supply a full record in the causes with short records, the opinion of the court on the case considered will be controlling as to the other cases.

2. GARNISHMENT—*necessity of evidence to support verdict.* In a dispute on whether a number of garnishment proceedings were consolidated as to the evidence, the verdicts in other cases than the one heard will be null as having no support in evidence unless they are admitted to have been consolidated therewith.

3. GARNISHMENT—*answer by good defense to debtor as bar to.* In a proceeding to garnishee insurance companies for insurance owing a debtor, the answers of the companies that the right to recover insurance had been forfeited because of the false representations of the insured, were, if true, good defenses to the debtor and raised a contingency which barred the garnishor of any right against the insurers.

4. GARNISHMENT—*unliquidated claims under insurance policy as not subject to.* Until the amount of an insurance loss had been determined in an action between insurer and insured, the creditor of the insured had no right to subject this unliquidated loss to garnishment in the hands of the insurer.

5. GARNISHMENT—*statutory nature of.* Garnishment is purely a remedy by statute, the words of which must control every proceeding thereunder, no matter what the effect.

6. GARNISHMENT—*when question of debt determined.* If at the time of the garnishee's answer he is indebted to the judgment debtor without uncertainty or contingency, that debt is subject to garnishment.

7. GARNISHMENT—*when will not lie for unliquidated or contingent claim.* A garnishee proceeding will not lie where the claim is contingent or unliquidated or is not ascertainable by computation except by the verdict of a jury.

Appeal by defendant from the Municipal Court of Chicago; the Hon. JOHN H. LYLE, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1926. Reversed and remanded with directions. Opinion filed October 19, 1927. Rehearing denied November 4, 1927.

Hicks & Folonie, for appellant.

Moses, Kennedy, Stein & Bachrach, for appellee; Hirsch E. Soble, of counsel.

Mr. Justice Wilson delivered the opinion of the court.

The facts in this case disclose that the Shraiberg Mfg. Co. was engaged in the sale of merchandise, consisting of ladies' coats and dresses, in the city of Chicago; and that in July, 1925, there was a fire in the premises of the company and that, at the time, there were outstanding insurance policies totalling $18,000, insuring the company against loss by fire to the contents of its store. On November 16, 1925, Robert Bachrach, as assignee, made claim against the Shraiberg Mfg. Co. upon 21 promissory notes for the sum of $2,723.28, together with $137 attorney's fees. These notes were signed by the Shraiberg Mfg. Co., by Irving H. Shraiberg, president, and were payable to one I. Arbetman and others, and these notes in turn were indorsed to Robert Bachrach, who brought this action in the municipal court. Judgment for the amount of $2,860.28, including the sum of $137 for attorney's fees, was entered on November 17, 1925, together with costs. On November 19, 1925, execution issued and was returned, no property found. November 27, 1925, an affidavit for garnishee summons was filed, setting up the judgment and the return of the execution, and stating that affiant believed that the Boston Insurance Company of Boston, Massachusetts, Delaware Insurance Company of New York, The London and Lancashire Insurance Company, Ltd., of London, The Girard Fire and Marine Insurance Company of Philadelphia, The Liverpool and London and Globe Insurance Company, Ltd., of Liverpool, England, Lon-

don and Scottish Assurance Corporation, Ltd., of London, England, Massachusetts Fire and Marine Insurance Company of Boston, Massachusetts, National Surety Fire Insurance Company of Omaha, Nebraska, New Hampshire Insurance Company of Manchester, Patriotic Insurance Company of America, and Royal Exchange Assurance of London were indebted to the defendant and had effects of said defendant in their custody and possession. Garnishee summons issued and certain interrogatories were filed, directed to each of the said garnishees. The interrogatories, in effect, asked of the several garnishees whether or not they had in their possession, charge or control, at the date of the service of the writ issued in the cause, any moneys, choses in action, credits or effects owned by or due to said Shraiberg Mfg. Co.

Special appearances of each garnishee were entered, together with a written motion to quash the summons in each cause. This motion to quash the summons was withdrawn, and on January 20, 1926, the answers of the garnishees were filed in said cause, denying that they had in their hands, or in their possession, charge or control, at the date of the service of the writ, any money, choses in action, credits or effects, owned by or due to said Shraiberg Mfg. Co. On March 12, 1926, amended answers were filed by each of the garnishees, stating that it had no property, goods, chattels, rights, credits or effects of any kind belonging to said Shraiberg Mfg. Co., except that there was a contingent claim asserted against it by the said Shraiberg Company, arising out of an incendiary fire on July 18, 1925, and setting out more specifically the following as answers to said interrogatories: "The said Shraiberg Mfg. Co.'s said policy of insurance was and became void before the commencement of this garnishment suit by reason of the said Shraiberg Mfg. Co. having misrepresented both in writing and orally and having concealed material facts and circumstances concerning the

subject of the insurance, and by reason of fraud and also false swearing by the said Shraiberg Mfg. Co. in material matters relating to the insurance and the subject thereof after the said loss by fire.

"The said Shraiberg Mfg. Co., by its officers and representatives, did falsely and fraudulently represent that the origin of the fire was unknown when they well knew that it was incendiary; did claim loss and damage in large value upon furniture and fixtures, well knowing that the said loss and damage was exaggerated at least 200%; did claim about $15,000 loss and damage on stock of goods, well knowing the loss was not in excess of half such amount. These representations were made by the said Shraiberg Mfg. Co. by its President under oath in sworn proof of loss to this garnishee, which representations were made with intent to cheat and defraud this garnishee; and by the terms of the said policy sued upon the said policy is void."

The policy of insurance contains the following provisions: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss." The garnishee asked to be discharged upon the filing of its answers, and this being denied, the case proceeded to trial before the court without a jury. There is nowhere in the record anything that shows a waiver of a jury, but in the placita in the record it does appear that the cause coming on to be heard and a jury being waived, the cause proceeded to trial before the court, so that the question of whether or not garnishees were denied the right of trial by jury does not appear to be present, as the

record appears before this court. On July 2, 1926, a judgment order was entered, finding that at the time of the service of the garnishment writs, there was due and owing to the defendant from the respective garnishees, amounts as follows:

"Boston Insurance Company of Boston, Massachusetts, $972.22;

"The Girard Fire and Marine Insurance Company of Philadelphia, $1944.44;

"The Royal Exchange Assurance of London, $3,402.76;

"Patriotic Insurance Company of America, $1,458.32;

"The New Hampshire Fire Insurance Company of Manchester, $972.22;

"National Security Fire Insurance Company of Omaha, Nebraska, $1,458.32;

"Massachusetts Fire and Marine Insurance Company of Boston, Massachusetts, $1,458.32;

"London and Scottish Assurance Corporation, Ltd., of London, England, $1,215.32;

"Liverpool and London and Globe Insurance Company, Ltd., of Liverpool, England, $1,215.32;

"The London and Lancashire Insurance Company, Ltd., of London, England, $1,458.32;

"Delaware Insurance Company of New York, $1,944.44."

Exception to the entering of this judgment and the finding was taken by each of the defendants and motion in arrest of judgment by each of the garnishees was overruled and exception taken; and judgment was accordingly entered (Abst. 8) that Shraiberg Mfg. Co., a corporation, for the use of the plaintiff, Robert Bachrach, as to the sum of $2,875.03 and interest thereon from November 17, 1925, together with plaintiff's costs, and as to the residue for the use of itself, Shraiberg Mfg. Co. have and recover from the respective garnishees the respective amounts in the foregoing

finding and that they have execution therefor and for the costs of the suit. From this judgment, each of the garnishees prayed a separate appeal, and it appears from the record that though the court was hearing the case of *Shraiberg Mfg. Co. for use of Robert Bachrach v. Boston Ins. Co. of Boston, Mass.,* the judgment that was entered as to the other garnishees was based upon the testimony heard in the foregoing cause, now on appeal before this court, and it is interesting to observe on what the court based its right to consider this testimony in all the other causes. Quoting from the record it appears that the following took place before the court near the close of the testimony.

"Mr. Soble: There is one matter I want to take up before we get to the arguments, and that is that I want to renew my motion as to the other insurance companies. I am going to ask the Court to consider the evidence in this case to stand as the evidence in all the other cases.

"The Court: Wasn't there a stipulation signed as to that?

"Mr. Soble: There isn't any stipulation.

"The Court: There isn't going to be any argument over what the agreement was in the beginning.

"Mr. Folonie: If the Court please, I made the suggestion to counsel that we let these other cases abide the result of this one, in other words, whatever the result of this one is in the Appellate Court or whatever it is that those others follow the same course. Counsel has a client that insists he thinks he is going to recover some money, that he therefore wishes to make it as expensive for us as possible, and he therefore wishes a judgment entered the same in that case so that the record would cost us $5,000 or $6,000 more if we appealed it. If counsel insists on doing it that way of course I will have to argue that out with the Court.

"The Court: We should have had an understanding in the beginning if those matters were discussed.

"Mr. Folonie: If the Court will remember, I made the suggestion at that time that we would abide the decision of this one on the others.

"The Court: Was there any discussion as to whether if there was an appeal these others should be—

"Mr. Soble: There was a large amount of discussion at the first afternoon session that lasted about two hours, and finally when we got through Mr. Folonie said he had a proposition to make, and then a few days later did make that proposition and we considered it and turned it down, and we are not renewing the original motion.

"Mr. Folonie: Not, yet, because I haven't made my motion at the close of all the testimony.

"Mr. Soble: I mean after you get through with that."

The cause on hearing before this court, as entitled herein, contains the complete record of the testimony. Short records were filed on appeal in each of the other cases by each separate garnishee. On motion before this court the causes were consolidated so that the testimony in this case was to be considered in each of the others, and while objections were filed here by appellees, no effort was made by them to supply the record in the other causes, and for that reason the opinion of this court in the case under consideration will be controlling as to the other causes. Moreover, if no evidence was heard or considered as to the other causes, then there is no evidence whatever to support a verdict. At all times during the proceeding in the municipal court, appellant contended and took the position that it was the duty of the trial court to dismiss the proceeding on the coming in of the answers of the garnishees, which set up, in effect, that the garnishees did not owe anything under their policies, and

that the claim, if any, of the plaintiff, was an unliqui-
dated claim and did not come within the meaning or
purview of the statute on garnishments. If this con-
tention is correct, it would dispose of the case without
requiring consideration of other matters of procedure
raised in the lower court. The Garnishment Act (Ca-
hill's St. ch. 62, ¶ 1; Smith-Hurd Ill. St. ch. 62, § 1),
provides as follows:

"1. Garnishment on Judgment.]    § 1. Whenever a
judgment shall be rendered by any court of record,
or any justice of the peace in this State, and an execu-
tion against the defendant or defendants in such judg-
ment shall be returned by the proper officer 'No prop-
erty found,' on the affidavit of the plaintiff, or other
credible person, being filed with the clerk of such court
or justice of the peace, that said defendant or defend-
ants has or have no property within the knowledge of
such affiant, in his or their possession, liable to execu-
tion, and that such affiant hath just reason to believe
that any other person *is indebted to such defendant,
or defendants, or to either or any of such defendants,
or hath any effects or estate of such defendant, or
defendants or of either or any of such defendants, in
his possession, custody or charge, it* shall be lawful
for such clerk or justice of the peace to issue a sum-
mons against the person *supposed to be indebted to,
or supposed to have any of the effects or estate of the
said defendant, or defendants, or of either or any of
such defendants,* commanding him to appear before
said court of justice, as a garnishee  *  *  *.''

Section 5, Cahill's St. ch. 62, ¶ 5, of said act, under
the section in regard to interrogatories and answers,
requires the garnishee to answer interrogatories in
writing, touching the lands, tenements, goods, chat-
tels, moneys, choses in action, credits and effects of
such defendant, and the value thereof, in his posses-
sion, custody or charge, or from him due and owing
to the said defendant at the time of the service of said

writ. Paragraph 7 of said Garnishment Act, Cahill's
St. ch. 62, ¶ 7, in providing the manner in which the
issues shall be made up and the cause tried, provides
that when the garnishee has not truly discovered the
lands, tenements, goods, chattels, moneys, choses in
action, credits and effects of the defendant, then there
shall be a trial conducted as other trials are conducted.
It will appear from a reading of the three sections in
question that the original or creating section limits
the right of recovery in garnishment proceedings to
cases where the garnishee is indebted to or has effects
or estates of the defendant in his possession. The
subsequent two sections, 5 and 7, Cahill's St. ch. 62,
¶¶ 5, 7, seem to have a broader significance by refer-
ence to choses in action, moneys due or claims, credits,
etc. This section has been construed by the Supreme
Court of this State, on the identical question, in the
case of *Capes v. Burgess*, 135 Ill. 61, which was a
garnishment proceeding, where the garnishees' by
their answer denied having in their possession any
goods, moneys, etc., or being in any way indebted, but
admitted that there had been a sale by them to the
defendant, with a warranty attached thereto, but de-
nied that there was any obligation on the warranty.
The only question before the court appeared to be
the question in issue, namely, as to whether a judg-
ment creditor could, by process of garnishment, liti-
gate a claim for unliquidated damages and subject
it to payment of the judgment. The court in its opin-
ion, page 65, says: "The remedy by garnishment is
statutory, and the question of its application to any
given case or class of cases is therefore purely a mat-
ter of statutory regulation. In other states, whenever
the question has arisen, the courts, basing their deci-
sions, of course, upon the peculiar provisions of their
own statutes, have held that a person whose liability
to the principal debtor was for unliquidated damages,
could not be charged as garnishee. The rule is accord-

Shraiberg Mfg. Co. v. Boston Ins. Co., 246 Ill. App. 196.

ingly laid down by the leading text-writers on the subject of Garnishment, that in no case where the claim of the defendant against the garnishee rests in unliquidated damages can the garnishee be made liable. (Authorities cited.)    *    *    *.

"The first section of our statute on Garnishment provides for suing out of a writ of garnishment by a creditor who has obtained judgment and whose execution has been returned unsatisfied, by filing an affidavit that the defendant has in his possession no property liable to execution within the knowledge of the affiant, and that the affiant has just reason to believe 'that any other person is indebted to such defendant, or hath any effects or estate of such defendant in his possession, custody or charge.' This provision clearly indicates an intention to subject to the process of garnishment two classes of assets and two only, viz, 1. debts owing from the garnishee to the judgment debtor, and 2. effects or estate of the judgment debtor in the possession, custody or charge of the garnishee. In the subsequent portions of the act the distinction between these two species of assets is accordingly kept up, and they are subjected to different modes of procedure and necessitate entirely different forms of judgment.

"The fifth section requires the creditor to file in writing the allegations and interrogatories upon which he shall be desirous of obtaining and compelling the answer of the garnishee 'touching the lands, tenements, goods, chattels, moneys, choses in action, credits and effects of such defendant, and the value thereof, in his possession, custody or charge, or from him due and owing to said defendant at the time of the service of the writ or at any time after, or which shall or may thereafter become due.' The same language, in substance, is repeated in section 7, where provision is made for a traverse of the answer by the creditor

when he is dissatisfied with the discovery made by the garnishee.

"It is claimed that because the language here used applies not only to the choses in action and credits of the defendant in the custody, possession and charge of the garnishee, but also to such as are due and owing or are to become due from the garnishee to the defendant, every species of liability from the former to the latter is thereby brought within the reach of the writ. This, in our opinion, by no means follows. It is true the distinction between the two classes of assets sought to be reached is not here so sharply drawn as in section 1, nor would it seem necessary that it should be. The classes of claims to which the writ was intended to apply having been once clearly stated, and that too in the section under which the proceeding is set in motion and jurisdiction in respect to it conferred, it will be presumed that the distinctions thus created and the limitations thus imposed were intended to be preserved and followed in the subsequent portions of the act, unless language is used which cannot be interpreted in harmony with such presumption."

The court further on in its opinion, on page 67, after discussing the term "credits" holds that the terms thereafter used in sections 5 and 7 must come within the meaning of the original section 1, and that choses in action must refer to a debt or credit and that a liquidated credit is one due upon payment and that that could be done only where the amount of the obligation is ascertained or is capable of ascertainment by computation; and holds in effect that an unliquidated contingent or uncertain claim does not come within the meaning of the Garnishment Act. This rule has been recognized and followed in the case of *Pressed Steel Equipment Co. v. Thornburgh Pressteel Co.*, 228 Ill. App. 1.

The rule as to the right of a judgment creditor to maintain garnishment proceedings on a claim of this kind, does not appear to be uniform, and in many

Shraiberg Mfg. Co. v. Boston Ins. Co., 246 Ill. App. 196.

of the States, either by reason of the wording of the statute or by the construction of the court, a broader meaning has been given to the act, and garnishment proceedings may be maintainable on contingent or unliquidated claims. The general rule is well stated in 12 R. C. L. under "Garnishment," section 25, p. 795.

"*Unliquidated Claim*—In several states the garnishment statutes compel the garnishee to answer upon oath the amount of his indebtedness to the principal debtor, in which case, if the amount of the claim is uncertain, it is impossible for the garnishee to make any answer upon which judgment against him can be rendered, thus excluding from the operation of the process all claims which are not certain, or at least ascertainable, in amount. In other states, there is a rule which excludes contingent claims, sometimes by the expression, and sometimes by the construction of the statute; but this rule, while apparently necessarily excluding claims which are contingent only as to amount, is sometimes applied to cases where the only contingency is whether anything will ever be due upon the claim, and if anything, a previously ascertained amount. In many states, also, there is a strict general rule, founded upon the phraseology of the statute, that a claim may not be garnished unless the principal debtor could at common law recover upon it against the garnishee in an action either of debt or indebitatus assumpsit. This rule, it will be seen, would necessarily exclude from the operation of the process all claims, whether in tort or contract, as well as claims in equity, which are unliquidated in amount, and are not certain, as id certum est quod certum reddi potest, in the sense of being ascertainable by calculation, and so would require the services of a jury to determine them. The reason for this rule lies in the fact that the statute in effect generally limits the process in one way or another to debts, and that those two forms of action are the appropriate means of collecting a debt, the action of debt, to enforce the debt itself, which must

be for a sum certain, and the action of indebitatus assumpsit, to recover in damages the amount of the demand, which is not upon an express promise to pay a certain or any other sum; and in this action the jury would, according to the evidence, give a verdict for the whole or a part of the sum demanded.''

We are referred to the case of *Hanover Fire Ins. Co. v. Connor*, 20 Ill. App. 297, by both appellant and appellee. The opinion in this case, also by Bailey, J., who afterwards wrote the opinion in the case of *Capes v. Burgess, supra*, hereinbefore referred to in our opinion, holds the rule that a debt which is uncertain and contingent and may never become due and payable, is not subject to garnishment. This case, while a garnishment proceeding against a fire insurance company for a loss incurred through fire, permitted a recovery because it appeared to the court that the contingency which was relied upon had been removed before the filing of the answer. In the case at bar the answer sets out matters of defense under the policies, namely, that the right to recover had been forfeited because of the false representations, and these, if true, would amount to a good defense in an action by a judgment debtor and the garnishee. Moreover, the amount of the loss was unliquidated and the garnishee had the right to have this question as well as any other questions of liability under the policy settled in a proper action between the garnishee and the judgment debtor.

The Supreme Court of this State, in the case of *Wheeler v. Chicago Title & Trust Co.*, 217 Ill. 128, which was a garnishment suit begun against a person as executor for the probate of letters testamentary, says in its opinion, on page 135: ''The remedy by garnishment is purely legal and every case must be brought within the scope of the statute, and whatever the effect may be the words of the statute must control.

"It is also the rule that the issue in a garnishment suit is whether the garnishee is indebted to the judgment debtor at the time of the answer, and if the indebtedness is owing without uncertainty or contingency at the date of the answer the debt is subject to garnishment."

When the answer was filed in this case the Trust Company, as executor, was legally entitled to possession of the estate and the legacy was not subject to any uncertainty or contingency.

It appears that whatever the general rule may be or whatever the rule may be with reference to particular statutes in other States, the law in this State is clear that a garnishee proceeding will not lie where the claim is contingent or unliquidated or is not ascertainable by computation except by a verdict of a jury, and for that reason the judgment of the municipal court is reversed and the cause remanded with directions to dismiss said garnishment proceedings on the answers herein filed by the defendant.

*Reversed and remanded with directions.*

TAYLOR, P.J., and HOLDOM, J., concur.